```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

G.C., et al.                    :    CIVIL ACTION
                                :
        v.                      :
                                :
Bristol Township School         :
District                        :    NO. 05-4800
```

MEMORANDUM AND ORDER

McLaughlin, J.                                      August 10, 2006

       This 1983 action arises from the 20-day expulsion of L.C., a fourth grader, by the Bristol Township School District for assaulting another student.  The plaintiffs complain that the disciplinary proceeding that led to the expulsion violated L.C.'s due process and Sixth Amendment rights, and that a teacher's taking of a statement from L.C. violated his Fifth Amendment right.

       The Court will grant the defendant's motion for summary judgment.  The Court concludes that the disciplinary proceeding fully comported with due process requirements and that neither the Fifth nor the Sixth Amendment is implicated by the facts involved here.

I.   <u>Facts</u>[1]

During the week of May 19, 2003, minor plaintiff L.C., then 10 years old and finishing up his fourth grade year, attended a school-sponsored overnight camp at Camp Hidden Falls. Stuart Abromovitz, employed by the School District as a teacher, was the Camp Director of Camp Hidden Falls during that time period.

On or about May 21, 2003, another 10 year old student at the camp, R.P., was seriously injured in his cabin. L.C. and R.P. were two of five students sleeping in the same cabin on that date. Abromovitz and Mari Binney, another employee of the School District, took R.P. to the hospital for treatment of his injuries. On the way to the hospital, R.P. did not tell Abromovitz or Binney what had caused his injuries. However, after he came out of the x-ray room and again on the way back to the camp from the hospital, R.P. told them that "Money" was hitting him in the head. At that time, neither Abromovitz nor Binney knew that L.C. and "Money" were the same person.

The next evening, Thursday, May 22, 2003, L.C. told a nurse, Pamela Nessen, that his nickname was "Money." Nessen

---

[1] The Court has taken the facts from the defendant's brief, after confirming that they are supported by the record. The plaintiffs have not challenged the defendant's recitation of the facts in their opposition to the summary judgment motion. The plaintiffs presented a very brief set of facts in their opposing brief that does not conflict with the defendant's version of the facts.

mentioned to Abromovitz that she met a kid before the camp dance who introduced himself as "Money." Upon learning that L.C. and "Money" were the same person, Abromovitz sought out L.C. to question him about his knowledge of the May 21, 2003, incident.

Abromovitz took L.C. outside the cabin twice and questioned him about R.P. and how he was injured. No one else was present during the questioning nor did Abromovitz notify anyone before questioning L.C. Abromovitz then returned L.C. to his cabin for the night with adult supervision. The next day, Abromovitz questioned another student, W.S., who slept in the top bunk connected to R.P.'s bunk. W.S. told Abromovitz that L.C. hit R.P. in the face. Abromovitz then kept L.C. close by and drove him back home in his van rather than allowing him to ride on the bus with the other students.

Upon L.C.'s return home from camp, plaintiffs G.C. and J.C. met with Nicholas Ciasullo, principal of Lafayette Elementary School, who informed them that L.C. was suspended pending investigation of the May 21, 2003, incident. Thereafter, on May 28, 2003, a meeting was held to discuss L.C.'s involvement in the May 21, 2003, incident. L.C., G.C., J.C., Abromovitz, Ciasullo, William Kent (Supervisor of Special Education) and Mary Ann Mysliwiec (Director of Special Education and Pupil Services) were all present during this meeting. Based upon the May 28,

2003, meeting and further investigation of the incident, Mysliwiec recommended L.C. for a Superintendent's Hearing.

On June 5, 2003, a Superintendent's Hearing was held with Assistant Superintendent Regina Cesario, who recommended that L.C. be placed in the Afternoon Program for 20 days. Because G.C. and J.C. disagreed with this decision, they were notified by letter dated June 5, 2003, that a formal hearing before the Board of School Directors had been scheduled for June 25, 2003, at 7:00 P.M.  The plaintiffs were also informed that they had the right to attend the hearing, have an attorney present and call witnesses on behalf of L.C.  On or about June 9, 2003, the plaintiffs retained Marc Weinstein, Esquire.

On June 13, 2003, Mysliwiec sent to G.C. and J.C. a letter listing the names of individuals who might testify on behalf of the Administration and enclosed additional documents that might be used as testimony at the June 25, 2003, formal hearing.  The plaintiffs received this letter and forwarded it to Weinstein.  Weinstein also copied the plaintiffs on all correspondence that he sent to the School District.  The plaintiffs met with Weinstein twice prior to the formal hearing held on June 25, 2003, and provided him with all documentation from the School District.  Prior to the formal hearing on June 25, 2003, neither the plaintiffs nor Weinstein requested that R.P. be presented for cross-examination.

The formal hearing was held on June 25 and June 26, 2003. At the hearing, Michael Clarke, Esquire, Special Counsel to the Committee of the Board of School Directors, informed the plaintiffs and Weinstein that they had the right to testify or remain silent, the right to cross-examine witnesses offered against L.C., the right to present witnesses, and the right to receive a copy of the transcript at their own cost. Timothy Duffy, Esquire, represented the Administration during the formal hearing. There were no objections to notice of the formal hearing. At the formal hearing, Weinstein never requested that R.P. be presented by the Administration for cross-examination nor did he ever make any objections to R.P.'s absence from the hearing. On August 21, 2003, the full Board of School Directors accepted the recommendation of the Committee and expelled L.C. for 20 days.

II. Analysis

The plaintiffs claim that L.C.'s Fifth Amendment right was violated by the questioning of L.C. by Abromovitz. They also argue that L.C.'s Sixth Amendment right and his right to due process were violated by the failure of the defendant to allow L.C. or his counsel to compel the presence of R.P. as a witness at the hearing. Having carefully reviewed the undisputed record, the Court concludes that there has been no constitutional

violation in the handling of the disciplinary matter involving L.C.

As an initial matter, there is no right to <u>Miranda</u> warnings or the presence of a parent or lawyer when a student is being questioned about conduct that may violate school rules. <u>Brian A. v. Stroudsburg Area Sch. Dist.</u>, 141 F. Supp. 2d 502, 511 (M.D. Pa. 2001); <u>Jarmon v. Batory</u>, 1994 U.S. Dist. LEXIS 8902 at *32 (E.D. Pa. June 29, 1994).  Nor does the Sixth Amendment attach to a school disciplinary hearing.  <u>United States v. Schiffer</u>, 836 F. Supp. 1164, 1172 (E.D. Pa. 1993) (citing <u>United States v. Marion</u>, 404 U.S. 307, 313 (1971).

The question is whether the procedures followed in this case comport with due process requirements.  The Court finds that they did.

In <u>Goss v. Lopez</u>, 419 U.S. 565 (1975), the Supreme Court determined that students facing temporary suspensions have interests qualifying for the protection of the Due Process Clause.  The Court described the process that is constitutionally required when a student is suspended from school for 10 days or less:

> [D]ue process requires...that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

<u>Id.</u> at 581.

The Court held that, in being given an opportunity to explain his version of the facts, the student must first be told what he is accused of doing and the basis of the accusation. Id. at 582. The Court found that there does not have to be a delay between the notice and the hearing. Id. The Court also stopped short of construing the Due Process Clause to require that the hearings afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call witnesses. Id. at 583.

The instant case involves a suspension greater than 10 days, so Goss does not control the analysis. The Goss Court stated that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." Id. at 584. The Court will apply the general procedural due process factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1975):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substantive procedural requirement would entail.

L.C. was provided with the following procedural safeguards: (1) notice of date and time of the hearings; (2) second notice identifying documents that may be used as testimony

7

at the hearings and names of witnesses that would likely testify on behalf of the Administration; (3) the right to be represented by counsel, which was exercised; (4) the right to cross-examine Administration witnesses, which was exercised; and (5) the right to present witnesses on his own behalf and admit relevant evidence, which was exercised.  These procedures go well beyond the Goss requirements for temporary suspensions and comply with due process.

The plaintiffs' main complaint is that R.P. did not testify at the hearing so that he could be cross-examined. Several courts have held that it does not violate due process for a school disciplinary hearing to be conducted without the presence of student witnesses.  Newsome v. Batavia Local Sch. Dist., 842 F.2d 920, 925 (6th Cir. 1988); McClain v. Lafayette County Bd. Of Educ., 673 F.2d 106, 109-110 (5th Cir. 1982) (the playing of taped student witness statements at the plaintiff's expulsion hearing did not violate the plaintiff's due process rights); L.Q.A. ex rel. Arrington v. Eberhart, 920 F.Supp. 1208, 1219 (M.D. Ala. 1996), aff'd 111 F.3d 897 (11th Cir. 1997) (admission of statements of students not present at the hearing does not violate procedural due process requirement); Tasby v. Estes, 643 F.2d 1103, 1106 (5th Cir. 1981) (rights in a student disciplinary hearing may properly be determined upon the hearsay

evidence of school administrators who investigate disciplinary infractions).

The reasoning of these cases is especially persuasive here. Counsel for L.C. had copies of all of the statements prior to the hearing. Counsel was able to cross-examine the administrators who took the statements from the students. Although he knew ahead of time that the alleged victim was not going to testify, counsel for L.C. did not request that he testify. Under all the circumstances, there has been no violation of due process.

An appropriate order follows.

```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

G.C., et al.                        :      CIVIL ACTION
                                    :
        v.                          :
                                    :
Bristol Township School             :
District                            :      NO. 05-4800
```

ORDER

AND NOW, this 10th day of August, 2006, upon consideration of defendant's Motion for Summary Judgment (Docket No. 12), the plaintiffs' opposition, and the defendant's reply thereto, IT IS HEREBY ORDERED that said motion is GRANTED for the reasons stated in a memorandum of today's date.  Judgment is hereby entered for the defendant and against the plaintiffs.  This case is closed.

```
                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.
```